UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**UNITED STATES OF AMERICA,**

v.                                                          Criminal No. 2:93cr90-1

**ERROL WINTER,**

      Defendant.

## OPINION AND ORDER

This matter is before the Court on Errol Winter's ("Defendant" or "Winter") motion to reduce his sentence pursuant to section 404(b) of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat 5194, 5222 (2018), ECF No. 260. Following various proceedings in this Court and the United States Court of Appeals for the Fourth Circuit, on September 9, 2020, the District Court issued an order denying Defendant's motion. ECF Nos. 310, 311. Defendant appealed the Court's ruling, and on November 15, 2021, the Fourth Circuit granted the Government's unopposed motion seeking to hold Defendant's appeal in abeyance pending the Supreme Court's ruling in Concepcion v. United States. ECF No. 323. On January 10, 2023, the Fourth Circuit granted the Government's motion seeking to remand the case to this Court for consideration of the effect of Concepcion v. United States, 142 S. Ct. 2389 (2022), with the Fourth Circuit further noting that "[t]he legal landscape has changed significantly since the district court entered its order in September 2020." ECF No. 324, at 2.

On February 3, 2023, in light of the Fourth Circuit's remand and express recognition of the recent shift in the legal landscape governing First Step Act motions, the undersigned judge ordered Defendant, who is represented by counsel, to file a supplemental brief "addressing the impact of Concepcion and any recently decided, or otherwise relevant, caselaw." ECF No. 328, at 2. The Government was instructed to file a supplemental response, and Defendant was provided an opportunity to file a reply. Id. The supplemental filings have now been received and considered, and for the reasons set forth below, the Court **GRANTS Defendant's motion** and reduces his sentence from life plus sixty months' imprisonment to a total term of **420 months' imprisonment**.[1]

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Court incorporates herein the factual and procedural background set forth in ECF No. 311. In summary, in late 1993, a jury found Defendant guilty of eleven felony counts including the drug trafficking conspiracy charged in Count One of the indictment. Count One charged Defendant with a drug conspiracy involving more than 5 kilograms of cocaine powder and more than 50 grams of cocaine base. ECF No. 1, at 2-3. Defendant was also convicted of nine substantive drug trafficking counts, as well as a § 924(c)

---

[1] Defendant was detained in July of 1993, and he has been imprisoned for the last thirty years. Although the Court does not have access to the "good time" credit calculations applicable to Defendant's sentence, Defendant may have earned sufficient credits against his 420-month sentence to be released in the very near term.

2

firearm offense that required a mandatory consecutive sentence of at least 60 months' imprisonment.

At sentencing, Defendant was attributed with 2.8 kilograms of cocaine powder and 55.75 kilograms of cocaine base, and he received a 4-level Guideline enhancement for acting as an organizer or leader of the long-running drug trafficking conspiracy. ECF No. 304, at 6, 30. Defendant's then-mandatory Guideline range was "life" imprisonment on the ten grouped drug counts, plus 60 months consecutive on the § 924(c) firearm count. On February 18, 1994, Defendant was sentenced to life imprisonment plus sixty 60 months consecutive. ECF No. 209.

Defendant's First Step Act motion was denied by the Court in September of 2020, with the Court acknowledging its authority to reduce Defendant's sentence but electing not to grant the requested reduction. ECF No. 311, at 2. When later ordering remand of the case, the Fourth Circuit highlighted the shift in the legal landscape since September of 2020 and instructed the Court to consider not only the Supreme Court's recent Concepcion opinion, but also "Fourth Circuit precedent that the district court did not have the benefit of at the time of its order." ECF No. 324, at 2.

## II. STANDARD OF REVIEW

Section 404 of the First Step Act enacted a remedial statutory change "intended to correct earlier statutes' significant disparities in the treatment of cocaine base (also known as crack

3

cocaine) as compared to powder cocaine." <u>United States v. Wirsing</u>, 943 F.3d 175, 176-77 (4th Cir. 2019). Section 404 grants this Court discretion to "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) were in effect at the time the covered offense was committed." First Step Act § 404(b). As the applicable law and sentencing practice has continued to evolve after <u>Wirsing</u>, there has been further movement toward focusing on intervening case-specific factual developments and on reducing the disparity between cocaine base and cocaine powder.

### III. DISCUSSION

On remand, the parties' supplemental briefs reveal areas of agreement, areas of disagreement, and one key area where the Government does not appear to take a specific position.

#### A.

As to the areas of agreement, both parties continue to acknowledge that Defendant is eligible for a reduced sentence under § 404(b) of the First Step Act. Additionally, with the exception of the potential impact of Count One's statutory maximum on the calculation of the advisory Guideline range, the parties agree that Defendant's Guideline range on the drug counts is now 360 months to life. Both parties further agree that such Guideline range is advisory, meaning that the Court has the authority to

4

impose a variance sentence on the grouped drug counts below 360 months.[2]

**B.**

As to the areas of disagreement, the Government asserts that the advisory Guideline range to be considered under the First Step Act analysis is 360 months to life, whereas Defendant asserts that such range should be "restricted" to 360-480 months. This asserted restriction is based on what Defendant contends is the updated statutory maximum punishment of 40 years on Count One due to the fact that: (1) although Defendant was convicted under 21 U.S.C. § 841(b)(1)(A), he was charged with trafficking a threshold quantity of 50 grams of cocaine base, a quantity that now qualifies as a § 841(b)(1)(B) offense with a maximum punishment of 40 years imprisonment; and (2) although Defendant was also charged in Count One with violating § 841(b)(1)(A) based on trafficking more than 5 kilograms of <u>powder cocaine</u>, the Government failed to clear the 5 kilogram threshold at trial or at sentencing.

The Court agrees with Defendant that, for purposes of evaluating the merits of his § 404(b) First Step Act motion, the "revised" statutory range on Count One is 5 – 40 years because: (1) the charged quantity of cocaine base only supports a § 841(b)(1)(B) conviction under current law; and (2) the record

---

[2] Defendant is, of course, still required to serve a consecutive 60-month sentence on the § 924(c) firearm count.

5

does not reveal that the jury, or even the Court at the time of sentencing, concluded that Defendant was responsible for trafficking 5 or more kilograms of cocaine powder. ECF Nos. 181, 311.³ However, notwithstanding such finding, the high end of the advisory Guideline range is not "restricted" to 480 months because Defendant was convicted of nine other drug trafficking counts in addition to Count One. Accordingly, the maximum Guideline sentence is restricted by the total combined number of years on the ten drug counts, a term of years that is far longer than a natural life. See U.S.S.G. § 5G1.2(d) (indicating that the district court should stack consecutive sentences when the count with the greatest punishment authorizes a maximum punishment that is lower than the high end of the advisory Guideline range). Additionally, as highlighted by the Government, even though the application of the

---

³ In its motion before the Fourth Circuit, the Government argued that "this case should be remanded for the district court to address the statutory maximum issue," United States v. Winter, No. 20-7453, ECF No. 31 (July 26, 2022). On remand, Defendant argues in detail that the applicable statutory maximum for Count One is now 40 years, ECF No. 335, at 9-12. In response, the Government does not squarely take up the issue, instead arguing only that § 404(b) does not alter "criminal liability" and that this Court lacks authority to vacate Defendant's § 841(b)(1)(A) conviction and "reclassify" it as a § 841(b)(1)(B) conviction. ECF No. 337, at 4-5 (citing United States v. Payne, 54 F.4th 748, 753 (4th Cir. 2022)). In the absence of a challenge to Defendant's position on this issue, and consistent with the Court's findings in an order reducing the sentence of one of Winter's co-defendants, ECF No. 290, at 2, the Court agrees with Defendant that it is appropriate to view Count One as having a "revised" statutory range of 5-40 years for the purposes of evaluating Defendant's First Step Act motion even though Defendant remains convicted of a § 841(b)(1)(A) offense. See United States v. Reed, 58 F.4th 816, 820 (4th Cir. 2023) (finding that, after application of the First Step Act, the "highest statutory maximum" for the relevant drug convictions "is now 40 years").

First Step Act eliminates "life" as a permissible sentence on any count of conviction, controlling Fourth Circuit precedent decided earlier this year confirms this Court's authority to leave Defendant's life sentence on Count One undisturbed. United States v. Reed, 58 F.4th 816, 824 (4th Cir. 2023).[4]

### C.

The issue on which the Government appears not to take a position is the ultimate issue in this case: whether the Court should impose a reduced sentence. In its brief filed in July of 2020, the Government acknowledged Defendant's eligibility for a sentence reduction but expressly opposed any reduction and asked the Court to "deny the defendant's motion." ECF No. 308, at 4. As summarized above, the Court considered the arguments of both sides and ultimately adopted the Government's recommendation and denied Defendant's motion. ECF Nos. 310, 311. In its 2023 supplemental brief, however, the Government no longer offers any express opposition to Defendant's motion. ECF No. 337. Rather, the Government's brief catalogs multiple aggravating factors in the record (e.g., Defendant possessed weapons while in prison - albeit more than 15 years ago; the conspiracy was broad in scope; Defendant was an "enforcer" in the conspiracy; Defendant's rehabilitation is unexceptional; etc.) but then concludes by

---

[4] Reed is just one of many examples of controlling intervening authority that was not available to the Court in September of 2020.

7

merely asking the Court not to impose a downward variance that would result in a sentence reduction to a term of less than 420 months' imprisonment (360 + 60). ECF No. 337, at 2-6.

The Government therefore has changed its position from expressly opposing Defendant's motion seeking a sentence reduction to requesting a sentence on the drug counts of at least 360 months' imprisonment. Such shift in position, especially when considered in conjunction with recently evolved precedent, significantly alters the posture of this case compared to when the Court denied Defendant's motion in September of 2020. Cf. United States v. McDonald, 986 F.3d 402, 411-12 (4th Cir. 2021) (extending Fourth Circuit precedent applicable to motions seeking the benefit of retroactive guideline amendments to § 404(b) First Step Act motions); Concepcion, 142 S. Ct. at 2396 ("Because district courts are always obligated to consider nonfrivolous arguments presented by the parties, the First Step Act requires district courts to consider intervening changes [in law or fact] when parties raise them."); Reed, 58 F.4th at 823-24 (finding that the district court was obligated to consider the impact of the reduced statutory maximum when deciding a § 404(b) motion in a case where the defendant was charged and convicted of a drug trafficking crime involving at least 50 grams of cocaine base).[5]

---

[5] In Reed, the Fourth Circuit noted that the district court had received "incorrect information" from the defendant and the probation office

D.

The Court has carefully reviewed the record in this case, including the sentencing transcript, the arguments advanced by both parties regarding Defendant's aggravating and mitigating conduct while incarcerated, letters submitted by Defendant, and the Presentence Investigation Report. ECF Nos. 250, 260-1, 304, 335, 337, 337-1, 338. The Court has also carefully considered all of the relevant § 3553(a) factors, including the need for deterrence, the need to protect the public from further crimes, the need for Defendant's sentence to promote respect for the law and to provide just punishment, and the need to avoid unwarranted sentencing disparities. The Court notes its agreement with the Government's arguments regarding the seriousness of Defendant's original offense due to Defendant's aggravating role and conduct. These considerations, along with the need to avoid unwarranted sentencing disparities, lead the Court to agree that a downward variance is not appropriate.[6] That said, the Court notes the

---

regarding the First Step Act's impact on the statutory maximum and that the district court's ruling "took place before many of [the Fourth Circuit's] decisions explaining the requirements for disposition of First Step Act motions and obviously before the Supreme Court's Concepcion decision." Reed, 58 F. 4th at 824. The same can be said here as to both the timing of this Court's September 2020 ruling and the fact that the probation calculation provided to the Court in 2020 did not reflect the reduced statutory punishment for Count One. See ECF No. 305.

[6] Though comparing a defendant's conduct to that of his co-defendants is certainly not dispositive as to the "sentencing disparity" factor, doing so is very instructive as to relative culpability. Here, the two best "comparator" co-defendants (co-defendants Wood and Palmer), who like Winter both proceeded to trial and had aggravating roles in the conspiracy, were

9

strength of several of Defendant's mitigation arguments, including that he had never served any lengthy term of imprisonment prior to committing the instant offense, that he has now served 30 years (more than half of his life) in prison for his offenses, and that he is no longer the same individual with recidivist or violent tendencies.

As to this last point, Defendant has not had a prison infraction in over fifteen years, to include during the elevated prison restrictions adopted in response to the multi-year COVID-19 pandemic. Notably, during this multi-year time frame, federal prisons implemented repeated lockdowns and other similar limitations on movement or privileges arising from the risk of transmitting COVID-19. While necessary, the changed conditions created by these emergency measures can be viewed as an additional punishment as compared to Winter's two comparator co-defendants, who were released before, or at the very beginning of, the COVID-19 pandemic.

In addition to the above, the Court considered recent changes to controlling precedent, as well as the Government's recent decision to recommend, at all new felony cocaine base sentencings,

---

initially sentenced to life imprisonment. Both Wood and Palmer later received reductions to the low-end of amended advisory Guideline ranges, and both were sentenced to serve a reduced sentence of approximately 360 months. ECF Nos. 146, 290. Palmer's sentence, however, was later further reduced to "time served," which accelerated his release date by approximately 20 months. ECF No. 271.

that the Court treat cocaine base cases in a manner that establishes an "equivalency" between cocaine base and powder cocaine (thereby significantly moderating the severity of current punishments for cocaine base offenders).[7] Finally, as noted above, the Government's position as to the resolution of Defendant's pending § 404(b) motion has changed significantly since 2020, with the Government now advocating for a total sentence of at least 35 years rather than expressly opposing Defendant's motion.

Having carefully considered all the relevant facts and arguments, including the lower statutory maximum applicable to Count One pursuant to the First Step Act, and the Government's lack of opposition to Defendant's motion, the Court finds that the motion is well founded, and that the appropriate total sentence is 420 months' imprisonment. In determining that 420 months is the proper punishment, the Court specifically considered "intervening" factual changes, Concepcion, 142 S. Ct. at 2404, including: (1) the absence of any prison infractions for over fifteen years; (2) Defendant's steps to obtain his GED and associate's degree while incarcerated despite the fact that, for most of his term of incarceration, his life sentence left him "without the prospect of any incentive or reward," United States v. Martin, 916 F.3d 389,

---

[7] Were the Court to fully adopt such approach in this case, it appears that the resulting recommended sentence on the drug counts would be approximately twenty-five to thirty years.

11

397 (4th Cir. 2019); and (3) the letter from a BOP correctional counselor in support of Defendant.

The Court declines to impose a lesser sentence in light of the seriousness of Defendant's offense, as punctuated by his leadership role, the length of the conspiracy, the quantity of cocaine base involved, and arguably of most concern, his past willingness to use violent force and intimidation. The Court further considered Defendant's increased culpability as compared to his co-defendants, including his leadership role, the length of his involvement, and the quantity of drugs attributed to him, all of which support a sentence of 420 months (which is five years longer than the reduced sentence received by co-defendant Wood).

Though the Court considered a longer sentence in order to reflect Defendant's increased culpability, other relevant factors are favorable to Defendant, to include the fact that co-defendant Palmer had been involved in a shootout involving a fight over "turf" and had at least 26 prison infractions, including infractions occurring after he received his first of two sentence reductions. ECF No. 258, at 18-19; ECF No. 271. Similarly, according to briefs field by the Government, co-defendant Wood had a violent criminal history (including weapons offenses, robbery and aggravated assault) and 19 prison infractions (including fighting, drug possession, and four infractions for possessing a weapon). ECF No. 133, at 8; ECF No. 286, at 3. Defendant has

committed far fewer infractions, including none during the last fifteen years, and his current status, including his education and age, suggest a reduced risk of recidivism.

## IV. CONCLUSION

In summary, for the reasons set forth herein, and for those argued by Defendant, the Court **GRANTS** Defendant's First Step Act motion. Defendant's sentence is hereby **REDUCED** from a total term of life plus 60 months' imprisonment to a **total term of 420 months' imprisonment**. This 420-month sentence consists of **360 months' imprisonment on Count One** and **60 months consecutive on Count Six**. Additionally, the Court reduces the concurrent sentences on **Counts 2, 20, and 23** from 480 months to **360 months**, with these reduced sentences imposed to run concurrently with each other and with the sentence imposed on Count One. The concurrent sentences of 240 months on the remaining six drug counts remain unchanged. All other provisions of the judgment dated February 18, 1994, shall remain in effect.

Defendant is reminded that, after his release, he will be on a term of Supervised Release for five years, and he should view his Probation Officer as a resource to turn to should Defendant find himself exposed to individuals or situations inviting him to participate in activities involving illegal narcotics or firearms. Should Defendant return to such unlawful activities after his sentence was reduced so substantially, it is unlikely that he will

13

be met with sympathy from the Court. Although this Court certainly does not prejudge how it would handle any hypothetical future revocation proceeding, Defendant is **ADVISED** of the seriousness of his term of federal supervision, as well as the seriousness of the potential consequences should he fail to comply with any of the terms of his Supervised Release.

The Clerk is **DIRECTED** to send a copy of this Order to counsel for Defendant, the United States Attorney, the Probation Office of this Court, and the Federal Bureau of Prisons.

**IT IS SO ORDERED.**

/s/ _____
Mark S. Davis
CHIEF UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
May 18, 2023